# EXHIBIT 17

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In Re the Application of: | ) Group Art Unit: 2454 |
| JEFFREY B. FRANKLIN | ) Examiner: Haresh N. Patel |
| Serial No.: 11/927,921 | ) |
| Filed: 10/30/2007 | ) |
| Confirmation No.: 6646 | ) |
| Atty. File No.: 50437-00001 | ) |
| For: "METHOD AND SYSTEM FOR HOSTING MULTIPLE, CUSTOMIZED COMPUTING CLUSTERS" | ) |

```
┌─────────────────────────────┐
│                             │
│        AMENDMENT            │
│                             │
└─────────────────────────────┘
```

**MAIL STOP: AMENDMENT**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Office Action of February 25, 2010, please amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims beginning on page 4 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

1 of 15

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

## Amendments to the Specification:

Please replace para. [0003] with the following amended paragraph:

[0003]As one example, High Performance Computing (HPC) clusters are difficult to setup, configure, and manage. An HPC cluster also requires numerous resources for ongoing maintenance that increases the cost and manpower associated with cluster ownership. Despite these issues, a company may require or at least demand HPC clusters (or other cluster types) to solve large problems that would take an inordinate amount of time to solve with a single computer. The need for HPC and other cluster types is in part due to the fact that processor speeds have stagnated over the past few years. As a result, many companies and other organizations now turn to HPC clusters because their problems cannot be solved more rapidly by simply purchasing a faster processor. These computer users are placed in the difficult position of weighing the benefits of HPC clusters against the resources consumed by owning such clusters. Decision makers often solve this dilemma by not purchasing clusters, and clusters have remained out of reach of some clients as the resource issues appear insurmountable.

Please replace para. [0007] with the following amended paragraph:

[0007]Hence, there remains a need for systems and methods for providing clusters to users or "clients" such as companies and other organizations that provides provide the computational assets or power that the clients demand while not presenting an unacceptable burden on the clients' resources. Preferably, these systems and methods would be effective in providing a cluster that is adapted to suit a particular need or computing task rather than forcing a one-size-fits-all solution upon a cluster user.

Please replace para. [0016] with the following amended paragraph:

[0016]The present invention is directed to methods and systems for hosting multiple clusters or clustered computing environments such that each of the clusters is configured to match or address a particular client or user computing task or problem (e.g., in response to a request for a hosted cluster from a client that identifies their computing and associated requirements). The cluster systems of the invention differs differ from prior clusters in part because they are physically provided at one or more locations that are remote from the processing user or client's facilities (i.e., the

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

computing resources are not owned and operated by the user).  The client may establish processing parameters that are used to configure a cluster in the system in a manner that suits their needs and, then, access their hosted cluster from a remote location via a communications network such as the Internet or other network.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

**Amendments to the Claims:**

This listing of claims will replace all prior versions and listings of claims in the application:

**Listing of Claims:**

1. (CURRENTLY AMENDED)  A computer system for hosting computing clusters for clients, comprising:

a private communications network linked to a public communications network;

a first cluster comprising a set of computing resources, including at least one hardware processor, in a first configuration, wherein the first cluster is communicatively linked to the private communications network; and

a second cluster comprising a set of computing resources, including at least one hardware processor, in a second configuration, wherein the second cluster is communicatively linked to the private communications network;

wherein the first configuration differs from the second configuration and wherein the first configuration provides a first computing environment for performing a first client task and the second configuration provides a second computing environment for performing a second client task.


2. (ORIGINAL)  The system of claim 1, wherein the computing resources comprise processing nodes, data storage shared by the processing nodes, and one or more communications networks linking the processing nodes to each other and to the data storage.


3. (ORIGINAL)  The system of claim 2, wherein the first configuration differs from the second configuration based on configuration of the processing nodes in the first and second clusters.


4. (ORIGINAL)  The system of claim 2, wherein the first configuration differs from the second configuration based on configuration of the data storage in the first and second clusters.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

5. (ORIGINAL)  The system of claim 2, wherein the first configuration differs from the second configuration based on configuration of the one or more communications networks provided in the first and second clusters.

6. (ORIGINAL)  The system of claim 1, further comprising a monitoring system monitoring operations of the first and second clusters, identifying operational and connectivity problems, and issuing an alert in response to the identified problems indicating a corresponding one of the first and second clusters associated with the identified problems.

7. (ORIGINAL)  The system of claim 6, wherein the monitoring system comprises a main monitor that operates to monitor the first and second clusters to identify the operation and connectivity problems and further comprises monitors for each node of the first and second clusters operating to check for hardware and software problems within a particular node and to report the hardware and software problems to the main monitor.

8. (ORIGINAL)  The system of claim 7, wherein one of the main monitors is provided within each of the first and second clusters and the system further comprises a central monitoring system in communication with the main monitors of the first and second clusters.

9. (CURRENTLY AMENDED)  The system of claim 1, further comprising ~~means for providing communication access from a public, digital communications network to the first and second clusters and~~ means, <u>positioned between the public communications network and the first and second clusters,</u> for limiting access to the first cluster to communication access from a first client associated with the first client task and limiting access to the second cluster to communication access from a second client associated with the second client task.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

10. (CURRENTLY AMENDED)  The system of claim 1, ~~further comprising a private communications network linked to a~~ wherein the public communications network is accessible by clients accessing the first and second clusters and wherein the system further ~~comprising~~ comprises a monitoring system linked to the private communications network for monitoring operation of the first and second clusters, wherein the first and second clusters each comprise a private cluster network for communications among the computing resources of a particular cluster and a gateway mechanism positioned between the private cluster network and the private communications network, whereby the communications within the first and second clusters are isolated.

CLAIMS 11-20 (CANCELLED)

21. (NEW)  The system of claim 1, wherein the first configuration configures the first cluster as a high performance computing cluster and wherein the second configuration configures the second cluster as a load balancing cluster or a high availability cluster.

22. (NEW)  A hosted cluster system, comprising:

a first cluster including a processing node with a processor, data storage, and software applications run by the processor, wherein the first cluster is configured as a high performance computing cluster;

a second cluster including a processing node with a processor, data storage, and software applications run by the processor, wherein the second cluster is configured as a high availability cluster or as a load balancing cluster.

a first gateway communicatively linked to the first cluster limiting access to the first cluster to communications transmitted over a public communications network from a first client associated with a first computing task; and

a second gateway communicatively linked to the second cluster limiting access to the second cluster to communications transmitted over the public communications network from a second client associated with a second computing task.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

23. (NEW)  The system of claim 22, wherein the first cluster is configured with a first configuration corresponding with the first computing task and wherein the second cluster is configured with a second configuration corresponding with the second computing task.

24. (NEW)  The system of claim 23, wherein the first configuration and the second configuration differ in configuration of the processing nodes and the data storage of the first and second clusters.

25. (NEW)  The system of claim 22, further comprising a firewall mechanism positioned between the first and second gateways and the public communications network, the firewall mechanism authenticating access requests to the first and second clusters and directing incoming connections associated with the first computing task to the first cluster and incoming connections associated with the second computing task to the second cluster.

26. (NEW)  The system of claim 25, further comprising a private communications network linking the firewall mechanism and the first and second gateways, whereby the first and second clusters are separated from the public communications network by the firewall mechanism, the private communications network, and the first and second gateways.

27. (NEW)  A computer system for hosting computing clusters for clients linked to a public network, comprising:
    a firewall mechanism communicatively linked to the public network;
    a first high performance computing (HPC) cluster comprising a set of computing resources in a first configuration; and
    a second high performance computing (HPC) cluster comprising a set of computing resources in a second configuration;

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

wherein the first configuration differs from the second configuration;

wherein the first configuration provides a first computing environment for performing a first client task and the second configuration provides a second computing environment for performing a second client task,

wherein the firewall mechanism limits communications from a first client associated with the first client task to connections with the first cluster and limits communications from a second client associated with the second client task to connections with the second clusters,

wherein the computing resources of each of the first and second clusters comprise processing nodes, data storage shared by the processing nodes, and one or more communications networks linking the processing nodes to each other and to the data storage, and

wherein the first configuration differs from the second configuration based on configuration of the processing nodes in the first and second clusters.

28. (NEW)  The system of claim 27, wherein the first configuration differs from the second configuration based on configuration of the data storage in the first and second clusters.

29. (NEW)  The system of claim 27, wherein the first configuration differs from the second configuration based on configuration of the one or more communications networks provided in the first and second clusters.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

## REMARKS

Prior to this Amendment, claims 1-20 were pending in the application.

Claims 11-20 were previously withdrawn in response to a restriction requirement, and claims 11-20 are cancelled with this Amendment to hasten allowance of the pending claims directed toward elected subject matter.

Claim 1 is amended to address the 35 U.S.C. §101 rejection and also to clarify that the computer system provides two or more clusters hosted within a private communications network as a single managed multi-cluster (e.g., with differing cluster types to suit differing client processing tasks/needs). Claims 9 and 10, which depend from claim 1, are amended to correspond with changes to claim 1 and to clarify the location of the access limiting means of claim 9 in the computer system.

New claim 21, which depends from claim 1, is presented to specifically claim the concept of a single hosted multi-cluster system in which one cluster is configured as a high performance computing (HPC) cluster while another cluster is configured either as a high availability cluster or a load balancing cluster (i.e., a differing cluster type within the same multi-cluster which had not been shown by prior art systems as noted in Applicant's Background).

New claims 22-29 are added to protect additional aspects of Applicant's invention not shown by the references presently cited by the Examiner.

After entry of the Amendment, claims 1-10 and 29 remain for consideration by the Examiner.

### Claim Rejections Under 35 U.S.C. §101

Claims 1-8 are rejected under 35 U.S.C. §101 as being directed toward non-statutory subject matter. Independent claim 1 is amended to include hardware components. Claims 2-8 depend from claim 1, and, hence, the amendment of claim 1 is believed to address the rejection of these claims.

### Claim Rejections Under 35 U.S.C. §102

In the Office Action mailed February 25, 2010, claims 1-10 were rejected under 35 U.S.C. §102(b) as being unpatentable over U.S. Pat. No. 6,996,503 ("De La Cruz"). This rejection is traversed based on the following remarks.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

Prior to turning to specific claim language, it may be beneficial to explain more generally Applicant's method and system for hosting multiple computer clusters that each can be configured uniquely to suit a remote client's needs. Applicant's Background explained that a computer cluster typically includes processors, communication links, data storages, and operating systems and software applications, and each cluster may be configured for high availability, for high performance, for load balancing, and/or for meeting particular needs. Typically, a company would set up a portion of their data center as a cluster with one of these configurations such as to solve a large processing problem(s) by breaking it up into individual tasks. However, due to the difficulty of managing, configuring, and maintaining clusters, most companies have chosen not host a cluster or clusters.

Multi-clusters were known in the prior art as indicated in Applicant's Background in para. [0006]. However, as noted in this paragraph, the "difficulties for managing clusters are amplified when considering multiple clusters because of their complexity." Applicant's described U.S. Pat. No. 6,438,705 as showing a method of managing a multi-cluster. This patent taught the conventional approach used by companies and that is to configure all of the clusters as a single type and, particularly, as high availability clusters. There is no teaching or suggestion that any of the clusters may have a different configuration or, significantly, that any of the clusters may be configured as a high performance computing (HPC) cluster. Also, this patent taught that the cluster had to "be owned and operated by the user and to remain on the client's property or site" such that it did not suggest solving problems with communicatively linking a multi-cluster system to a public network (such as the Internet).

As discussed in para. [0016] of Applicant's Detailed Description, Applicant's cluster system differs from prior cluster systems in part because the clusters "are physically provided at one or more locations that are remote from the processing user or client's facilities." In practice, the "client may establish processing parameters that are used to configure a cluster in the system in a manner that suits their needs and, then, access their hosted cluster from a remote location via a communications network such as the Internet. Each cluster in the multi-cluster system may have a differing configuration in contrast to prior clusters such as the one shown in Figure 1 of

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

Applicant's specification that is representative of the multi-clusters taught in U.S. Pat. No. 6,438,705 in which each cluster was required to "have a uniform design with like hardware and software."

In contrast, Applicant teaches that one cluster may be a HPC cluster while others may be an HPC cluster with a differing configuration or even a load balancing cluster or a high availability cluster. Such an arrangement is shown, for example, in Applicant's Figure 2 with system 200 in which clusters 250, 251, 251 are connected to the public network 204 via private company network 230 (with firewall 210 provide to authentic clients and gateways 240, 241, 242 limiting client access to the appropriate cluster 250, 251, 252). Each cluster 250, 251, 252 may be a different type of cluster and/or be configured with hardware, software, storage, internal cluster communications, and other resources to suit a particular processing task or problem of a client.

Now, turning to specific claim language, claim 1 is directed to a computer system for hosting multiple computing clusters. The system includes a private communications network (such as private company network 230 of Figure 2 of Applicant's specification) that is linked to a public communications network. The system also includes first and second clusters of computing resources that are each linked to the public network via the private communications network. The first and second clusters have their respective computing resources in first and second configurations that differ from each other (e.g., the clusters are differently configured in contrast to U.S. Pat. No. 6,438,705), with the first configuration providing a first computing environment for performing a first client task and the second configuration for performing a second client task. De La Cruz fails to show first and second clusters in a single system (behind a private communications network) that have first and second configurations for their computing resources. Hence, this reference does not support an anticipation rejection of claim 1.

De La Cruz fails to show multiple clusters hosted in a system and communicated with via a single private communications network. Instead, De La Cruz illustrates a single cluster such as cluster 208 of Figure 1 that may be accessed by two client systems 202, 204 (e.g., not a cluster configured to suit a single client's task). As noted in the first paragraph of the De La Cruz Summary (lines 56-62 of col. 2), this reference

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

is teaching use of a high availability cluster (such as cluster 208 described as a high availability cluster at line 62, col. 5 to line 8, col. 6) and to remote monitoring of such a high availability cluster. There is no suggestion that the cluster 208 should be provided with a second cluster or that the second cluster should have a differing configuration of its resources (e.g., that the second cluster should be a HPC cluster, for example).

The Office Action cites De La Cruz as showing first and second clusters with first and second configurations (that differ from each other) at col. 9, lines 1-59. Applicant disagrees with this understanding of De La Cruz. In this portion of the reference, De La Cruz indicates that operation of a number of high availability clusters may be monitored such as cluster 208. However, each is configured as a high availability cluster and, more significant to claim 1, there is no discussion that two of such HA clusters are linked to a public network via a single private communications network (e.g., two clusters are hosted at a single location, for example). Each HA cluster 208 appears to be a standalone cluster as shown in Figure 2.

Further, there is no discussion in lines 1-59, col. 9 of De La Cruz that any of the HA clusters are have first or second configurations that provide first and second computing environments "for performing a first client task" and "for performing a second client task." De La Cruz generally discusses monitoring operations remotely and based on monitored information sending configuration changes to "adjust the configuration of the HA clusters" that the central, remote cluster manager is monitoring. However, the configuration changes appear to be based on operation parameters/monitored information and not based upon client tasks (e.g., no teaching in the cited portions of configuring the HA cluster 208 for performing a particular client task let alone configuring two HA clusters linked to a private communication network for two such client tasks). For all these reasons, the computer system of claim 1 is not anticipated by De La Cruz.

Claims 2-10 and 21 depend from claim 1 and are believed allowable over De La Cruz at least for the reasons provided for allowing claim 1 over this reference. Further claim 9 calls for means positioned between the public network and the first and second clusters for limiting access to the clusters to the appropriate client (such as with gateways or a firewall as described by Applicant). The Office Action cites De La Cruz

12 of 15

as showing such access limiting means with a router in the public network, but this fails to show limiting access with a means positioned between the clusters and such a public network. Hence, claim 9 is not anticipated by De La Cruz for this additional reason.

Claim 21 calls for the first cluster to be configured as a HPC cluster while the second cluster is configured as a high availability or load balancing cluster. De La Cruz only teaches monitoring of a high availability cluster such as cluster 208, and, as a result, this reference cannot anticipate configuring two clusters differently as called for in claim 21 (i.e., not just differing configuration but actually a different type of cluster within a multi-cluster system). For this additional reason, claim 21 is allowable over De La Cruz.

Also, in the Office Action, claims 1-10 were rejected under 35 U.S.C. §102(e) as being unpatentable over U.S. Pub. No. 2010/0023949 ("Jackson"). This rejection is traversed based on the following remarks.

As with De La Cruz, Jackson fails to show multiple clusters connected to a private communications network. See, for example, Jackson's Figure 1 which fails to teach that the clusters 110, 112, 114 are access via a public network and linked to a private network. Further, Jackson fails to show that two clusters in a multi-cluster system are configured differently based on two different client tasks. Jackson teaches that a cluster is a collection of computing nodes "organized for accomplishing a task or set of tasks" in para. [0009], and Jackson also para. [0052] and elsewhere that a cluster may be configured or customized to suit a client's reservation that indicates a processing need.

However, Applicant is not attempting to claim configuring a cluster to perform a particular task. Instead, claim 1 requires that two clusters linked to a private communications network have differing configurations to perform two different tasks. As discussed above, the prior art taught that multi-clusters had clusters with like configurations (e.g., all HA clusters or all load balancing clusters configured to perform a similar processing task). Jackson fails to provide such a multi-cluster arrangement, and, hence, it cannot support an anticipation rejection of claim 1.

The Office Action cites Jackson as teaching the limitations of claim 1 at paras. [0029], [0052], [0099], and [0100]. In para. [0029], Jackson defines a cluster and

13 of 15

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

discusses its reservations of computing resources such as those of a cluster. In para. [0052], Jackson indicates that reserved resources may be customized to suit a workload associated with a reservation (such as via virtual partitioning), but, as with para. [0029], there is no mention that two or more clusters are linked to a private communications network and these particular clusters are configured differently (instead, Jackson indicates a cluster may be customized to suit a particular workload). In paras. [0099] and [0100], Jackson again discusses modifying requested resources based on a request for such resources. There is no discussion of hosting two clusters on a private network and configuring these two clusters differently, but, instead, a single cluster is modified to suit a reservation. Based on these deficiencies of Jackson, the reference fails to support an anticipation rejection of claim 1.

Claims 2-10 and 21 depend from claim 1 and are believed allowable over Jackson at least for the reasons provided for allowing claim 1 over this reference. Further, as discussed above, claim 21 calls for the clusters to be configured as differing types of clusters. There is no mention in Jackson of configuring one cluster within a multi-cluster group to be a HPC cluster and another cluster in the group to be either an HA cluster or a load balancing cluster. For this additional reason, claim 21 is believed allowable over Jackson.

Additionally, claim 3 calls for the first and second configurations to differ based on the configuration of the processing nodes in the first and second clusters. The Office Action cites Jackson for showing feature in paras. [0029], [0052], [0099], and [0100]. However, these paragraphs are silent on configuring processing nodes to suit a reservation.

Claim 5 calls for the first and second configurations to differ based "on configuration of the one or more communications networks provided in the first and second clusters. Again, the Office Action cites Jackson for showing feature in paras. [0029], [0052], [0099], and [0100], but these paragraphs are silent on communication networks within a cluster or that such networks/links may be beneficially configured differently in different clusters to suit a client's processing task.

Further, claim 9 calls for means for limiting access to the particular clusters to the corresponding client, and the Office Action cites the same four paragraphs of Jackson.

Appl. No. 11/927,921
Response to Office Action of February 25, 2010

These paragraphs provide no teaching of controlling communication of clients with the clusters performing their tasks but only discuss submitting of reservations/requests. For these additional reasons, claims 3, 5, and 9 are not anticipated by Jackson, and Applicant requests that the rejection of these claims be withdrawn.

Further still, the Office Action rejected claims 1-10 under 35 U.S.C. §102(e) as being unpatentable over U.S. Pub. No. 2009/0019535 ("Mishra"). This rejection is traversed based on the following remarks.

Mishra does not provide any showing of two or more clusters being hosted in the way specified by claim 1. Specifically, the Office Action cites Mishra as showing first and second clusters with the DNS DHCP cluster 255 and servers 210 shown in Figure 1. As shown, components/systems 210, 250 are not connected to a single private communications network but, instead, are shown to be connected to networks 280 and 285. Further, a DNS DHCP cluster is a special purpose cluster that performs DNS functions and is not configured to provide a computing environment for a particular client computing task (e.g., is only configured for the DNS functionality). For these reasons, Mishra does not anticipate the system of claim 1. Besides the use of the word cluster for device/system 255, this reference does not appear to have any teaching relevant to managing/hosting multiple clusters as taught and claimed by Applicant.

Claims 2-10 and 21 depend from claim 1 and are believed allowable over Mishra at least for the reasons for allowing claim 1 over this reference.

## Conclusions

Based upon the foregoing, Applicant believes that all pending claims are in condition for allowance and such disposition is respectfully requested.

Please credit any overpayment or charge any underpayment to Deposit Account No. 50-1419.

Respectfully submitted,

MARSH FISCHMANN & BREYFOGLE LLP

Date: _May 17, 2010_          By: _____

Kent A. Lembke
Reg. No. 44,866
720-562-5507 Tel

15 of 15

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/927,921 | Filing Date<br>10/30/2007 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☒ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | OR | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT | | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 05/17/2010 | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 19 | Minus | ** 20 | = 0 | X $26 = | 0 | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | X $110 = | 0 | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | 0 | OR | TOTAL ADD'L FEE | |

| AMENDMENT | | (Column 1) | | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/TAMARA HARRELL/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7626888 |
| **Application Number:** | 11927921 |
| **International Application Number:** | |
| **Confirmation Number:** | 6646 |
| **Title of Invention:** | METHOD AND SYSTEM FOR HOSTING MULTIPLE, CUSTOMIZED COMPUTING CLUSTERS |
| **First Named Inventor/Applicant Name:** | JEFFREY B. FRANKLIN |
| **Customer Number:** | 25231 |
| **Filer:** | Kent Alan Lembke./Laura Mellblom |
| **Filer Authorized By:** | Kent Alan Lembke. |
| **Attorney Docket Number:** | 50437-00001 |
| **Receipt Date:** | 17-MAY-2010 |
| **Filing Date:** | 30-OCT-2007 |
| **Time Stamp:** | 16:51:33 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Amendment0510.pdf | 1211589<br>1df5aaa894ccf4a7b7b602c510bcff13ea869 09b | yes | 15 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Specification | 2 | 3 |
| Claims | 4 | 8 |
| Applicant Arguments/Remarks Made in an Amendment | 9 | 15 |

| Warnings: | |
|---|---|

| Information: | |
|---|---|

| Total Files Size (in bytes): | 1211589 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.